Per Curiam.
Petitioner Lawrence Jefferson, who has been sentenced to death, claimed in both state and federal courts that his law *285 yers were constitutionally inadequate because they failed to investigate a traumatic head injury that he suffered as a child. The state court rejected that claim after making a finding that the attorneys were'advised by an expert that such investigation was unnecessary. Under the governing federal statute, that factual finding is presumed correct unless any one of eight exceptions applies. See 28 U. S. C. §§2254(d)(l)-(8) (1994 ed.). But the Court of Appeals considered only one of those exceptions (specifically § 2254(d)(8)). And on that basis, it considered itself “duty-bound” to accept the state court’s finding, and rejected Jefferson’s claim. Because the Court of Appeals did not fully consider several remaining potentially applicable exceptions, we vacate its judgment and remand.
I
When Jefferson was a child, he “suffered a serious injury to his head.” Jefferson v. Terry, 490 P. Supp. 2d 1261, 1326 (ND Ga. 2007); see id., at 1320 (quoting Jefferson’s mother’s testimony that “a car ran over the top of his head” when he was two years old). The accident left his skull swollen and misshapen and his forehead visibly scarred. Jefferson v. Hall, 570 F. 3d 1283, 1311, 1315, n. 4 (CA11 2009) (Carnes, J., dissenting). During the District Court proceedings below, uncontroverted experts testified that, as a result of his head injury, Jefferson has “permanent brain damage” that “causes abnormal behavior” over which he “has no or substantially limited control.” 490 F. Supp. 2d, at 1321-1322. According to these experts, Jefferson’s condition causes “‘emotional dullness,’” “‘restless or aggressive characteristics,’” “‘impulsiveness,’” “‘temper outbursts,’” “‘markedly diminished impulse control,’ ” “‘impaired social judgment,’” and “‘transient outbursts of rage which are totally inconsistent with his normal behavioral pattern.’ ” Id., at 1322, 1327.
The experts further testified that Jefferson’s “ ‘severe cognitive disabilities’ ” “ ‘profoundly alter’ ” his “ ‘ability to plan and coordinate his actions, to be aware of the consequences *286 of his behavior, and to engage in premeditated or intentional acts.’” Id., at 1327. But they testified he is neither psychotic nor retarded. Id., at 1319. Thus, they said, to a lay observer or even to a professional psychologist, Jefferson does not outwardly appear mentally impaired. Indeed, according to the experts, “ ‘the behavior that may result from’ ” his condition “‘could, without the administration of proper testing, be mistaken for volitional.’” Id., at 1322.
Jefferson faced a death sentence for killing his co-worker while the two men were fishing. Id., at 1271-1272. Prior to trial, he was examined by a psychologist named Dr. Gary Dudley, who prepared a formal report in which he concluded that Jefferson’s mental deficiencies do not impair “ ‘his judgment or decision-making capacity.’” 570 F. 3d, at 1294 (quoting report). But Dr. Dudley’s report included a caveat: “ ‘One possibility that could not be explored because of [Jefferson’s] incarceration has to do with the sequelae,’ ” i. e., pathologies, related to a “‘head injury experienced during childhood.’ ” Ibid. “ ‘In my opinion,’ ” he wrote, “ ‘it would be worthwhile to conduct neuropsychological evaluation of this individual to rule out an organic etiology,’ ” i. e., to rule out brain damage. Ibid.
Although “it is undisputed that the testing” Dr. Dudley recommended “could have easily been performed,” 490 F. Supp. 2d, at 1322, and that Jefferson’s attorneys possessed police reports and hospital records recounting his head injury, id., at 1323, the attorneys did not have Jefferson tested. At sentencing, they presented only testimony from two prison guards, who stated that Jefferson was an unproblematic inmate, and from three members of Jefferson’s family, who testified that he is a “responsible, generous, gentle, and kind” person and “a good father.” 570 F. 3d, at 1290-1291. And while Jefferson’s mother briefly mentioned the car accident, “she was not questioned and did not offer any testimony regarding the impact, if any, that the accident had on him.” Id., at 1291. Thus, “[a]s far as the jury knew, Jeffer *287 son did not suffer from brain damage or neurological impairment; he had no organic disorders”; and “his emotional stability, impulse control, and judgment were perfectly normal.” Id., at 1311 (Carnes, J., dissenting).
Jefferson sought habeas relief in state court, arguing that his two trial attorneys unreasonably failed to pursue brain-damage testing. In response, the trial attorneys testified that they did not pursue such testing because, after delivering his formal written report, Dr. Dudley later told them that further investigation “ ‘may be a waste of time because the rest of [his] report’ ” had “ ‘said that [Jefferson] was non psychotic.’” Id., at 1295 (quoting testimony). Dr. Dudley did not testify in person at the hearing, but he submitted a sworn affidavit denying that he had ever made such statements. He said “it had always been his expert opinion ‘that neuropsychological testing was necessary”’ and that when he wrote as much in his formal report “he ‘meant it.’” Id., at 1312 (Carnes, J., dissenting) (quoting affidavit). He added, “ ‘I never, before or after that report, suggested to [Jefferson’s attorneys] that such an evaluation was not necessary or that it would not be worthwhile.’ ” Ibid.; cf. Pet. for Cert. 17, n. 12.
Jefferson contends, and the State has not disputed, that after the hearing concluded the state-court judge contacted the attorneys for the State ex parte. And in a private conversation that included neither Jefferson nor his attorneys, the judge asked the State’s attorneys to draft the opinion of the court. See id., at 3, 12. According to Jefferson, no such request was made of him, nor was he informed of the request made to opposing counsel. Id., at 12, n. 8, 13; see also Jefferson v. Zant, 263 Ga. 316, 431 S. E. 2d 110, 111 (1993) (“Jefferson contends [the order] amounts to no more and no less than a reply brief to which [he] has not had a chance to respond”).
The attorneys for the State prepared an opinion finding that “Dr. Dudley led [Jefferson’s trial attorneys] to believe that further investigation would simply be a waste of time *288 because Petitioner [i]s not psychotic.” Jefferson v. Zant, Civ. Action No. 87-V-1241 (Super. Ct. Butts Cty., Ga., Oct. 7, 1992), p. 16, App. 4 to Pet. for Cert. 16 (hereinafter State Order); see also id., at 37. The opinion “specifically credits the testimony of [the trial attorneys] with regard to their efforts to investigate Petitioner’s mental condition.” Id., at 18; see also id., at 36. And relying on these findings, it concludes that Jefferson’s attorneys “made a reasonable investigation into [his] mental health” and were thus not ineffective. Id., at 37.
Notably, as the Georgia Supreme Court acknowledged, the State’s opinion discusses statements purportedly made on Jefferson’s behalf by a witness “who did not testify” or participate in the proceedings. 263 Ga., at 318, 431 S. E. 2d, at 112; see State Order 24-25. Nonetheless, the opinion “was adopted verbatim by the [state] court.” 263 Ga., at 317, 431 S. E. 2d, at 111. And while the State Supreme Court recognized that we have “ ‘criticized’ ” such a practice, it affirmed the judgment. Id., at 317, 320, 431 S. E. 2d, at 112, 114 (quoting Anderson v. Bessemer City, 470 U. S. 564, 572 (1985)).
II
Jefferson next sought federal habeas relief in the District Court. In his opening brief, he argued that “there is no reason under principles of comity or otherwise to give any deference to the findings of the State Habeas Corpus Court.” Brief for Petitioner in No. l:96-CV-989-CC (ND Ga.), Doc. 105, p. 4, and n. 1 (hereinafter District Court Brief). In support of that argument, he claimed that the state court “merely signed an order drafted by the State without revision of a single word,” even though the order “described witnesses who never testified.” Ibid. And he said that such a process “raisfes] serious doubts as to whether [the judge] even read, much less carefully considered, the proposed order submitted by the State.” Ibid.
*289 The District Court ruled in Jefferson’s favor. It noted that under the relevant statute “factual findings of state courts are presumed to be correct unless one of . . . eight enumerated exceptions . applies.” 490 F. Supp. 2d, at 1280; see also ibid., n. 5 (listing the exceptions). And it acknowledged “the state habeas corpus court’s failure to explain the basis” for its credibility findings. Id., at 1324, n. 17. But it accepted Jefferson’s claim of ineffective assistance of counsel without disturbing the state court’s factual findings because it believed he should prevail even accepting those findings as true. Id., at 1324-1325.
On appeal, Jefferson defended the District Court’s judgment primarily on its own terms. But he also argued that the state court’s factfinding was “dubious at best” in light of the process that court employed, and that the Court of Appeals therefore “should harbor serious doubts about the findings of fact and credibility determinations in the state court record.” Brief for Petitioner/Appellee in No. 07-12502 (CA11), pp. 31-32, n. 10 (hereinafter Appeals Brief).
A divided Court of Appeals panel reversed, and Jefferson filed this petition for certiorari asking us to review his claim of ineffective assistance of counsel. And, in so doing, he challenges — as he did in the State Supreme Court, the District Court, and the Court of Appeals — “the fact findings of the state court,” given what he describes as the deficient procedure employed by that court while reviewing his claim. Pet. for Cert. 11-13, 17, n. 12, 18, n. 13 (recounting “ 'reason[s] to doubt’” the state court’s findings). Cf. Lebron v. National Railroad Passenger Corporation, 513 U. S. 374, 379 (1995) (stating standard for preserving an issue for review in this Court).
Ill
This habeas application was filed prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 and is therefore governed by federal habeas law as it existed prior to that point. Lindh v. Murphy, 521 U. S. 320, 326-336 *290 (1997). In 1963, we set forth the “appropriate standard” to be applied by a “federal court in habeas corpus” when “the facts” pertinent to a habeas application “are in dispute.” Townsend v. Sain, 372 U. S. 293, 312. We held that when “the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings” the district court “ordinarily should . . . accept the facts as found” by the state-court judge. Id., at 318. However, “if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding,” we held that the federal court “must hold an evidentiary hearing” to resolve any facts that “are in dispute.” Id., at 312. We further “explained] the controlling criteria” by enumerating six circumstances in which such an evidentiary hearing would be required:
“(1) [T]he merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.” Id., at 313 (emphasis added).
Three years later, in 1966, Congress enacted an amendment to the federal habeas statute that “was an almost verbatim codification of the standards delineated in Townsend v. Sain.” Miller v. Fenton, 474 U. S. 104, 111 (1985). That codification read in relevant part as follows:
“In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination ... of a factual issue, made by a State *291 court of competent jurisdiction .. . , shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
""(1) that the merits of the factual dispute were not resolved in the State court hearing;
“(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
“(3) that the material facts were not adequately developed at the State court hearing;
“(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
""(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
“(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
“(7) that the applicant was otherwise denied due process of law in the State court proceeding;
“(8) or unless ... the Federal court on a consideration of [the relevant] part of the record as a whole concludes that such factual determination is not fairly supported by the record.” § 2254(d) (emphasis added).
As is clear from the statutory text quoted above, and as the District Court correctly stated, if any “one of the eight enumerated exceptions ... applies” then “the state court’s fact-finding is not presumed correct.” 490 F. Supp. 2d, at 1280; accord, Miller, supra, at 105 (“Under 28 U. S. C. § 2254(d), state-court findings of fact "shall be presumed to be correct’ in a federal habeas corpus proceeding unless one of eight enumerated exceptions applies”); see also 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 20.2c, pp. 915-918 (5th ed. 2005).
*292 Jefferson has consistently argued that the federal courts “should harbor serious doubts about” and should not “give any deference to” the “findings of fact and credibility determinations” made by the state habeas court because those findings were drafted exclusively by the attorneys for the State pursuant to an ex parte request from the state-court judge, who made no such request of Jefferson, failed to notify Jefferson of the request made to opposing counsel, and adopted the State’s proposed opinion verbatim even though it recounted evidence from a nonexistent witness. See, e. g., Appeals Brief 32, n. 10; District Court Brief 4, n. 1; Pet. for Cert. 12. These are arguments that the state court’s process was deficient. In other words, they are arguments that Jefferson “did not receive a full and fair evidentiary hearing in . . . state court.” Townsend, supra, at 312. Or, to use the statutory language, they are arguments that the state court’s “factfinding procedure,” “hearing,” and “proceeding” were not “full, fair, and adequate.” §§ 2254(d)(2), (6), (7).
But the Court of Appeals did not consider the state court’s process when it applied the statutory presumption of correctness. Instead, it invoked Circuit precedent that applied only paragraph (8) of § 2254(d), which, codifying the second Townsend exception, 372 U. S., at 313, lifts the presumption of correctness for findings that are “not fairly supported by the record.” See 570 F. 3d, at 1300 (quoting Jackson v. Herring, 42 F. 3d 1350, 1366 (CA11 1995), in turn quoting 28 U. S. C. § 2254(d)(8)). And even though the Court of Appeals “recognize[d]” that Jefferson had argued that the state court’s process had produced factual findings that were “ ‘dubious at best,”’ and that federal courts should therefore “‘harbor serious doubts about’” the state court’s “‘findings of fact and credibility,’” the Court of Appeals nonetheless held that the state court’s findings are “ ‘entitled to a presumption of correctness’ ” that it was “duty-bound” to apply. 570 F. 3d, at 1304, n. 8 (quoting Appeals Brief 32, n. 10). The Court of Appeals explicitly stated that it considered itself *293 “duty-bound” to defer to the state court’s findings because “Jefferson has not argued that any of the state courts’ factual findings were ‘not fairly supported by the record, ’” a direct reference to § 2254(d)(8) and to the second Townsend exception. 570 F. 3d, at 1304, n. 8 (emphasis added). And it then concluded: “Based on these factual findings of the state ha-beas courts — all of which are fairly supported by the record — we believe that Jefferson’s counsel were reasonable in deciding not to pursue neuropsychological testing.” Id., at 1304 (emphasis added).
In our view, the Court of Appeals did not properly consider the legal status of the state court’s factual findings. Under Townsend, as codified by the governing statute, a federal court is not “duty-bound” to accept any and all state-court findings that are “fairly supported by the record.” Those words come from § 2254(d)(8), which is only one of eight enumerated exceptions to the presumption of correctness. But there are seven others, see §§2254(d)(l)-(7), none of which the Court of Appeals considered when addressing Jefferson’s claim. To be sure, we have previously stated in cases applying § 2254(d)(8) that “a federal court” may not overturn a state court’s factual conclusion “unless the conclusion is not ‘fairly supported by the record.’ ” Parker v. Dug-ger, 498 U. S. 308, 320 (1991) (granting federal habeas relief after rejecting state court’s finding under § 2254(d)(8)); see also Demosthenes v. Baal, 495 U. S. 731 (1990) (per curiam) (applying § 2254(d)(8)); cf. post, at 303 (Scalia, J., dissenting). But in those cases there was no suggestion that any other provisions enumerated in § 2254(d) were at issue. That is not the case here. In treating § 2254(d)(8) as the exclusive statutory exception, and by failing to address Jefferson’s argument that the state court’s procedures deprived its findings of deference, the Court of Appeals applied the statute and our precedents incorrectly.
Although we have stated that a court’s “verbatim adoption of findings of fact prepared by prevailing parties” should be *294 treated as findings of the court, we have also criticized that practice. Anderson, 470 U. S., at 572. And we have not considered the lawfulness of, nor the application of the ha-beas statute to, the use of such a practice where (1) a judge solicits the proposed findings ex parte, (2) does not provide the opposing party an opportunity to criticize the findings or to submit his own, or (3) adopts findings that contain internal evidence suggesting that the judge may not have read them. Cf. id., at 568; Ga. Code of Judicial Conduct, Canon 3(A)(4) (1993) (prohibiting ex parte judicial communications).
We decline to determine in the first instance whether any of the exceptions enumerated in §§2254(d)(l)-(8) apply in this case, see, e. g., Cutter v. Wilkinson, 544 U. S. 709, 718, n. 7 (2005), especially given that the facts surrounding the state habeas court’s process are undeveloped. Respondent has conceded that the State drafted the state court’s final order at that court’s request and that the order was adopted verbatim, 263 Ga., at 317, 431 S. E. 2d, at 111, and has not disputed in this Court that the state court solicited the order “ex parte and without prior notice” and “did not seek a proposed order, from Petitioner,” Pet. for Cert. 12, and n. 8. But the precise nature of what transpired during the state-court proceedings is not fully known. See 263 Ga., at 316-317, 431 S. E. 2d, at 111 (noting dispute as to whether Jefferson “had a chance to respond” to the final order); see also Pet. for Cert. 13.
Accordingly, we believe it necessary for the lower courts to determine on remand whether the state court’s factual findings warrant a presumption of correctness, and to conduct any further proceedings as may be appropriate in light of their resolution of that issue. See Townsend, 372 U. S., at 313-319; Keeney v. Tamayo-Reyes, 504 U. S. 1 (1992). In so holding, we express no opinion as to whether Jefferson’s Sixth Amendment rights were violated assuming the state court’s factual findings to be true.
*295 * * *
The petition for a writ of certiorari and motion to proceed informa pauperis are granted. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.