BOLIN, Justice.
Mark Allen Jenkins petitioned this Court for a writ of certiorari, raising a number of grounds for certiorari review. This Court granted the petition for the limited purpose of determining whether the Court of Criminal Appeals’ decision affirming the trial court’s verbatim adoption of the State’s proposed order dismissing Jenkins’s petition for postconviction relief filed pursuant to Rule 82, Ala. R.Crim. P., conflicts with this Court’s decisions in Ex parte Ingram, 51 So.3d 1119 (Ala.2010), and Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.Sd - (Ala.2011).[1]

Facts and Procedural History

Mark Allen Jenkins was convicted in March 1991 of two counts of murder made capital because the murder was committed during the course of a robbery and during the course of a kidnapping, see §§ 13A-5-40(a)(2) and 13A-5-40(a)(l), Ala.Code 1975. By a vote of 10-2, the jury recommended that Jenkins be sentenced to death. The trial court accepted the jury’s recommendation and sentenced Jenkins to death for the capital-murder convictions. Judge H.E. Holladay presided over the trial.
On February 28, 1992, the Court of Criminal Appeals affirmed Jenkins’s convictions and sentences. See Jenkins v. State, 627 So.2d 1034 (Ala.Crim.App.1992). On May 28, 1993, this Court affirmed the Court of Criminal Appeals’ decision. See Ex parte Jenkins, 627 So.2d 1054 (Ala.1993). On March 28, 1994, the United States Supreme Court denied Jenkins’s petition for a writ of certiorari. See Jenkins v. Alabama, 511 U.S. 1012, 114 S.Ct. 1388, 128 L.Ed.2d 63 (1994).
On May 26, 1995, Jenkins filed his first Rule 32 petition in the St. Clair Circuit Court, in which he asserted numerous claims for relief. On November 26, 1996, Jenkins filed an amendment to his Rule 32 petition in which he alleged, among other things, that he was entitled to a new trial because a juror, L.V., failed to disclose during voir dire that her nephew and his wife had been murder victims. The Rule 32 postconviction proceeding was assigned to St. Clair Circuit Judge William Hereford, who conducted the first day of a three-day evidentiary hearing on December 10, 1996. On January 18, 1997, after the first day of the evidentiary hearing but before the final day of the hearing, the State filed a response to Jenkins’s amended Rule 32 petition in which it asserted, among other things, that Jenkins’s juror-misconduct claim was procedurally barred pursuant to Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., because it could have been, but was not, raised at trial or on direct appeal. The trial court conducted the remainder of the evidentiary hearing on January 20 and 21,1997.
On December 31, 1997, the trial court entered an order denying relief on the claims contained in Jenkins’s Rule 32 petition. The trial court concluded, in part, *1252 that Jenkins’s claim that Juror L.V.’s failure to disclose during voir dire that her nephew and his wife had been murdered was procedurally barred pursuant to Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., because this claim could have been, but was not, raised at trial or on direct appeal.[2]
On February 27, 2004, the Court of Criminal Appeals affirmed the trial court’s denial of Jenkins’s Rule 32 petition, holding that Jenkins’s juror-misconduct claim was barred pursuant to Rule 32.2(c), Ala. R.Crim. P., because it was raised in an untimely amendment to the original Rule 32 petition and did not relate back to the original petition. See Jenkins v. State, 972 So.2d 111 (Ala.Crim.App.2004). On April 8, 2005, this Court reversed the Court of Criminal Appeals’ judgment “insofar as [that court] held that Jenkins’s claim of juror misconduct, presented for the first time in his amended petition, could not be considered because it did not relate back to his original petition.” Ex parte Jenkins, 972 So.2d 159, 165 (Ala.2005). This Court remanded the case for further proceedings.
On November 23, 2005, the Court of Criminal Appeals again affirmed the trial court’s order denying relief on Jenkins’s juror-misconduct claim. Jenkins v. State, 972 So.2d 165 (Ala.Crim.App.2005). In affirming the trial court’s decision, that court noted that Jenkins had failed to present any evidence during the evidentiary hearing indicating that his juror-misconduct claim was not known and could not have been discovered in time to raise it at trial or on appeal. 972 So.2d at 167-68. On May 18, 2007, this Court denied Jenkins’s petition for a writ of certiorari.
On May 15, 2008, Jenkins filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Alabama. The federal habeas corpus petition included Jenkins’s juror-misconduct claim.
Subsequent to Jenkins’s filing his habe-as corpus petition, this Court issued its decision in Ex parte Burgess, 21 So.3d 746 (Ala.2008). In Ex parte Burgess, this Court reviewed the Court of Criminal Appeals’ affirmance of the trial court’s summary dismissal of Burgess’s Rule 32 petition, in which he raised a juror-misconduct claim, on the basis that that claim could have been, but was not, raised at trial or on appeal. See Rule 32.2(a)(3) and (a)(5). In reversing the Court of Criminal Appeals’ judgment, this Court reaffirmed the principle established in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992), and Ex parte Pierce, 851 So.2d 606 (Ala.2000), that a Rule 32 petitioner raising juror-misconduct claim relating to a juror’s failure to disclose information during voir dire may overcome the procedural bars of Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., if that petitioner “ ‘established] that the information was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ ” Ex parte Burgess, 21 So.3d at 751 (quoting Ex parte Pierce, 851 So.2d at 616 (emphasis added)) On October 1, 2008,[3] Jenkins filed a second Rule 32 petition based on the authority of Ex parte Burgess in which he *1253 realleged his juror-misconduct claim. In his Rule 32 petition, Jenkins “incorporate[d] ... the record of the [previous] evidentiary hearing conducted” on his juror-misconduct claim. Jenkins’s second Rule 32 petition was assigned to yet another circuit judge — Judge James E. Hill, Jr.
On October 31, 2008, the State answered the petition and moved to dismiss it, arguing that the petition was procedurally barred pursuant to Rules 32.2(b) and 32.2(c), Ala. R.Crim. P., and that, based on the previous Rule 32 hearing, Jenkins’s juror-misconduct claim was without merit. The State further argued that because Jenkins’s claim was procedurally barred and was without merit, it should be dismissed pursuant to Rule 32.7(d), Ala. R.Crim. P.
On November 5, 2008, Jenkins moved the trial court for time to file a reply to the State’s answer and motion to dismiss. On November 21, 2008, before the trial court had ruled on Jenkins’s request, the State submitted to the trial court a proposed order denying Jenkins’s second Rule 32 petition. The State’s proposed order contained numerous citations to the record on direct appeal from Jenkins’s trial in 1991, as well as to the record on appeal following Jenkins’s initial postconviction proceedings in 1996 and 1997. The proposed order purported to make factual and credibility findings regarding witnesses whom Judge Hill had never seen testify and also contained a detailed analysis of the voir dire proceedings at trial.
Jenkins states that the proposed order was filed by the State using first-class mail on Friday, November 21, 2008. Thus, he surmises that, given that the courthouse would be closed for the weekend, the earliest the trial court or a member of its staff could have seen the proposed order would have been the following Monday, November 24, 2008. Jenkins notes that the State’s proposed order was mailed to the St. Clair Circuit Court clerk’s office in Ashville. However, he states that “upon information and belief’ Judge Hill was not sitting in Ashville on Monday, November 24, 2008, but was instead sitting in Pell City on that date. On November 25, 2008, Judge Hill was sitting in the Ashville courthouse; the trial court signed the State’s proposed order that day, denying all requested relief without making any changes to it.
Jenkins states that the trial court’s records are kept in the circuit court clerk’s office and that a log is kept of when court files are “checked out” by court personnel. Jenkins contends that before signing the proposed order, neither Judge Hill nor any member of his staff “checked out” from the clerk’s office his court files containing the transcripts and pleadings from his trial and the first Rule 32 proceedings.
On December 3, 2008 — after signing the proposed order dismissing Jenkins’s second Rule 32 petition — the trial court granted Jenkins’s previously filed motion for time to reply to the State’s answer and motion to dismiss. Although the trial court signed the proposed order denying Jenkins’s second Rule 32 petition on November 25, 2008, Jenkins did not receive notice of the trial court’s action until December 23, 2008. In the meantime, Jenkins, on December 15, 2008, filed his response to the State’s answer and motion to dismiss, a motion for leave to file an amended petition for relief from his convictions and sentences, and a motion to set a briefing schedule. Jenkins filed an “Emergency Motion for Reconsideration” once he received notice that the trial court had signed the State’s proposed order denying his Rule 32 petition. Jenkins urged the trial court in his motion for reconsideration to act quickly, believing that the trial court would lose jurisdiction of his case on *1254 December 25, 2008. However, it appears that those assertions were erroneous because, although the trial court signed the order adopting the State’s proposed order on November 25, 2008, it did not actually enter that order until January 2, 2009. Jenkins filed a notice of appeal to the Court of Criminal Appeals on December 29, 2008. On January 9, 2009, the trial court entered an order stating that it had lost jurisdiction of the case to the Court of Criminal Appeals.
The Court of Criminal Appeals affirmed the trial court’s dismissal of Jenkins’s Rule 32 petition. Jenkins v. State 105 So.3d 1234 (Ala.Crim.App.2011). This petition for a writ of certiorari followed.

Standard of Review

“‘This Court reviews pure questions of law in criminal cases de novo.’ ” Ex parte Morrow, 915 So.2d 539, 541 (Ala.2004) (quoting Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003)).

Discussion

Jenkins contends that the Court of Criminal Appeals mischaracterized and misapplied the holdings in Ex parte Ingram, supra, and Ex parte Scott, supra, to the unique facts of this case. In Ex parte Ingram, the defendant, who was convicted in 1995 of capital murder and was sentenced to death, filed a Rule 32, Ala. R.Crim. P., petition on February 1, 2002, seeking relief from his conviction and sentence. In March 2002, the State filed a response to the defendant’s petition and a motion for a partial summary dismissal. In April 2002, the defendant filed a response to the State’s motion for a partial summary dismissal and an amended Rule 32 petition, in which he also requested full discovery and funds to allow him to hire certain experts. In July 2002, the State responded to the defendant’s motions and amended Rule 32 petition.
On May 20, 2004, the State filed a proposed order denying the defendant’s Rule 32 petition. The defendant did not respond to the State’s proposed order. Judge Jerry L. Fielding, who had presided over the defendant’s capital-murder trial in 1995, retired while the Rule 32 proceedings were pending, and the case was assigned to Judge William E. Hollingsworth.
On June 8, 2004, Judge Hollingsworth entered an order denying the defendant’s Rule 32 petition. The order adopted verbatim the proposed order filed by the State on May 20, 2004, the only modifications being that the heading stated “Order” rather than “Proposed Order” and the signature page contained Judge Holl-ingsworth’s signature rather than Judge Fielding’s signature. Judge Hollingsworth did not hold a hearing or a status conference on the defendant’s petition and pending motions and did not explicitly address the defendant’s pending motions in the June 8 order. On July 21, 2004, Judge Hollingsworth entered an order purporting to rescind the June 8 order. On September 7, 2004, the Court of Criminal Appeals issued an order directing the trial court to set aside its July 21 order, holding that the trial court had lost jurisdiction to modify its June 8 order 30 days after entering it.
The Court of Criminal Appeals affirmed the summary denial of the defendant’s Rule 32 petition. See Ingram v. State, 51 So.3d 1094 (Ala.Crim.App.2006). The defendant petitioned this Court for a writ of certiorari, which this Court granted to determine whether the June 8 order represented the actual findings and conclusion of the trial court.
In reversing the Court of Criminal Appeals’ affirmance of the trial court’s order denying the defendant’s Rule 32 petition, this Court stated:
*1255 “It is axiomatic that an order granting or denying relief under Rule 82, Ala. R.Crim. P., must be an order of the trial court. It must be a manifestation of the findings and conclusions of the court. Although no authority other than the creation of the judicial branch and the delegation of judicial authority to the circuit courts of this State in the Alabama Constitution, Ala. Const.1901, Amend. No. 328, § 6.01(a) (now § 139(a), Ala. Const. 1901 (Off.Re-eomp.)), is necessary to support this proposition, the provisions of Rules 32.1 through 32.10, Ala. R.Crim. P., also provide support. Among other things, Rule 32.7(d) states that ‘[if] the court determines ’ certain matters to be true, it may summarily dismiss the petition; Rule 32.9(c) provides that ‘[i]f the court finds in favor of the petitioner, it shall enter an appropriate order’; Rule 32.9(d) states that ‘[t]he court shall make specific findings of fact relating to each material issue of fact presented’; and Rule 32.10 refers to ‘the decision of a circuit court.’
[[Image here]]
“... [T]he general rule is that, where a trial court does in fact adopt the proposed order as its own, deference is owed to that order in the same measure as any other order of the trial court. In Dohyne v. State, 805 So.2d 733, 741 (Ala.Crim.App.2000), the Court of Criminal Appeals stated:
“ ‘ “ ‘While the practice of adopting the state’s proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.’ ” ’
“805 So.2d at 741 (quoting other cases; emphasis added). In McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003), the Court of Criminal Appeals stated that ‘even when a trial court adopts verbatim a party’s proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous.’ Cf. United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964) (expressing disapproval of the ‘mechanical’ adoption of findings of fact prepared by a party, but stating that such findings are formally those of the trial judge and ‘are not to be rejected out-of-hand’).
“In this unusual case, however, we cannot conclude that the above-stated ‘general rule’ is applicable. That is, despite the fact that the trial judge signed the June 8 order, we cannot conclude that the findings and conclusions in that order are in fact those of the court itself.
“The June 8 order begins as follows:
“ ‘Having considered the first amended Rule 32 petition presented to the Court, the State of Alabama’s amended answer, the State of Alabama’s motions to dismiss, the evidence presented at trial, and the events within the personal knowledge of the Court, the Court makes the following findings of fact and conclusions of law and summarily dismisses and denies the claims in Ingram’s first amended Rule 32 petition.’
“(Emphasis added.) After a rendition of the facts of the case, the June 8 order states:
“ ‘The findings by the Court of Criminal Appeals [in Ingram v. State, 779 So.2d 1225 (Ala.Crim.App.1999),] guide the Court in its resolution of the issues presented in the first amended Rule 32 petition. The Court is also relying on the trial transcript where necessary to support the Court’s find *1256 ings and the resolution of this Rule 32 petition. In addition, this Court presided over Ingram’s capital murder trial and personally observed the performance of both lawyers throughout Ingram’s trial and sentencing.’
“(Emphasis added.)
“The obvious problem with the emphasized portions of the above-quoted passages from the June 8 order is that Judge Fielding, not Judge Hollings-worth, presided over Ingram’s capital-murder trial. Although minor factual errors understandably find their way into orders drafted by trial courts in handling busy dockets, an error as to whether the judge in fact sat as the trial judge in a capital-murder trial and is basing his decision on personal observations and personal knowledge acquired by doing so is the most material and obvious of errors.
“Ingram contends that the nature of these errors indicates that the trial judge did not even read the proposed order submitted by the State before signing and issuing it as the order of the court and that the June 8 order cannot represent the actual and independent findings of the trial court. Ingram further contends that Judge Hollings-worth’s attempt in the July 21 order to rescind the June 8 order and to recuse himself from the case confirms that Judge Hollingsworth recognized that the June 8 order was fatally flawed.
“Despite the erroneous statements in the June 8 order, the Court of Criminal Appeals affirmed the judgment of the trial court in summarily dismissing Ingram’s Rule 32 petition based upon the standard of review an appellate court employs in evaluating findings of fact and conclusions of law even when those findings and conclusions are adopted verbatim from the prevailing party. The Court of Criminal Appeals quoted the following passage from Dobyne:
“ ““ “While the practice of adopting the state’s proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous .... ”
“ ‘ “ ‘Bell v. State, 593 So.2d 123, 126 (Ala.Crim.App.1991), cert. denied, 593 So.2d 123 (Ala.), cert. denied, 504 U.S. 991, 112 S.Ct. 2981, 119 L.Ed.2d 599 (1992).’ ” ’
“... The Court of Criminal Appeals concluded that ‘the facts and conclusions of law in the circuit court’s [June 8] order were not clearly erroneous’ and that therefore the trial court’s judgment was due to be affirmed. Ingram II [Ingram v. State, 51 So.3d 1094, 1100 (Ala.Crim.App.2006) ].
“The State echoes the reasoning of the Court of Criminal Appeals, noting that Ingram failed to explain specifically how any of the trial court’s findings and conclusions were clearly erroneous. The State further contends that the erroneous statements in the trial court’s June 8 order are harmless because, it argues, the specific findings in the order as to Ingram’s claims were not based upon the trial judge’s personal knowledge. ‘Instead, Judge Hollingsworth denied the individual claims in the Rule 32 petition based on his finding that the claims were not sufficiently pleaded, were not supported by the trial transcript, were decided adversely to Ingram on direct appeal, or were procedurally defaulted.’
“Though the ‘clearly erroneous’ standard of review may apply in cases in which the trial court has adopted, as its *1257 own, the proposed order of the prevailing party, the analysis proffered by both the Court of Criminal Appeals and the State fails to admit of the most fundamental and the first requirement: that the order and the findings and conclusions in such order are in fact those of the trial court.
[[Image here]]
“Accordingly, appellate courts must be careful to evaluate a claim that a prepared order drafted by the prevailing party and adopted by the trial court verbatim does not reflect the independent and impartial findings and conclusions of the trial court. In Bell v. State, 593 So.2d 123 (Ala.Crim.App.1991) — the case the Court of Criminal Appeals quoted in Ingram II for the ‘clearly erroneous’ standard of review — the Court of Criminal Appeals observed:
“ ‘The trial court did adopt verbatim the proposed order tendered by the state; however, from our review of the record, we are convinced that the findings and conclusions are those of the trial court. The record reflects that the trial court was thoroughly familiar with the case and gave the appellant considerable leeway in presenting evidence to support his claims.’
“Bell, 593 So.2d at 126 (emphasis added). The undisputed facts in the present case obviously prevent a similar conclusion here.
“We are forced by the nature of the errors present in the June 8 order to reverse the judgment of the Court of Criminal Appeals. In the simplest terms, the patently erroneous nature of the statements regarding the trial judge’s ‘personal knowledge’ and observations of Ingram’s capital-murder trial undermines any confidence that the trial court’s findings of fact and conclusions of law are the product of the trial judge’s independent judgment and that the June 8 order reflects the findings and conclusions of that judged’
Ex parte Ingram, 51 So.3d at 1122-25 (footnote omitted).
In Ex parte Scott, the trial court adopted the State’s answer as its order dismissing a Rule 32 petition. This Court concluded that the trial court erred in adopting the State’s answer as its order because a party’s answer is infected with “adversarial zeal” and that “verbatim adoption of the State’s answer to [a] Rule 32 petition as its order, by its nature, violates this Court’s holding in Ex parte Ingram,” which requires that a trial court’s order reflect the independent and impartial findings of the trial court. — So.3d at-.
Jenkins’s argument as to this issue is twofold: First, he contends that by upholding the trial court’s order here the Court of Criminal Appeals so limited the holdings of Ex parte Ingram and Ex parte Scott that, unless a petitioner presents a factual scenario exactly like the scenarios presented in those cases, the petitioner would not be entitled to relief. Second, he contends that the facts suggest that the trial court could not have made the independent findings, credibility determinations, and conclusions the order purports it made in the short time that elapsed between receiving the proposed order and signing it. The Court of Criminal Appeals stated:
“Jenkins argues that the circuit court erroneously adopted the State’s proposed order denying relief. Specifically, he argues that the circuit court’s adoption of the State’s proposed order violated his right to ‘independent findings of fact and conclusions of law.’ (Jenkins’s brief, at 15.)
[[Image here]]
*1258 “In Ex parte Ingram, 51 So.3d 1119, 1122 (Ala.2010), the Alabama Supreme Court reaffirmed ‘the general rule ... that, where a trial court does in fact adopt the [prevailing party’s] proposed order as its own, deference is owed to that order in the same measure as any other order of the trial court.’ The Court went on to state that ‘[i]n this unusual case, [it could not] conclude that the above-stated “general rule” was applicable’ because the adopted order contained indisputably false statements. Id. at 1123-24. Specifically, the judge who signed the State’s proposed order stated that he had presided over Ingram’s trial and had personal knowledge of the trial proceedings when, in fact, another judge had presided over the trial. Id. The Supreme Court then held that ‘the patently erroneous nature of the statements regarding the trial judge’s “personal knowledge” and observations of Ingram’s capital-murder trial undermines any confidence that the trial court’s findings of fact and conclusions of law are the product of the trial judge’s independent judgment and that the ... order reflects the findings and conclusions of that judge.’ Id. at 1125 (emphasis in the original). Because the order established that the conclusions were not those of the judge, the Supreme Court reversed the dismissal of Ingram’s Rule 32 petition. Id.
“Later, in Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d -, -(Ala.2011), the Alabama Supreme Court held that the circuit court erred in adopting verbatim as its order the State’s answer to a Rule 32 petition. After reaffirming its earlier decision in Ex parte Ingram, the Court held that it constitutes error for a circuit court to adopt the prevailing party’s answer because an answer ‘is infected with ... adversarial zeal [and] because an answer is a pleading that never is prepared with the pretense of impartiality.’ Id. Because a party’s answer ‘is infected with ... adversarial zeal,’ the ‘verbatim adoption of the State’s answer to [a] Rule 32 petition as its order, by its nature, violates [the Court’s] holding in Ex parte Ingram [that the circuit court’s order must] reflect the independent and impartial findings and conclusions of the trial court.’ Id.
“Unlike Ex parte Ingram, the circuit court’s order in this case does not contain statements that are ‘patently erroneous.’ 51 So.3d at 1125. Also, unlike Ex parte Scott, the circuit court adopted the State’s proposed order as opposed to an answer ‘infected with ... adversarial zeal.’ — So.3d at-. Further, the circuit court’s order purports to constitute the circuit court’s independent judgment. For instance, in its order denying relief, the circuit court stated that it had ‘thoroughly reviewed and considered’ Jenkins’s current Rule 32 petition, the State’s answer, the evidence presented at the evidentiary hearing on Jenkins’s first Rule 32 petition, and the record on direct appeal, prior to dismissing the current petition. Based on these facts, this Court holds that ‘the general rule ... that, where a trial court does in fact adopt the [prevailing party’s] proposed order as its own, deference is owed to that order in the same measure as any other order of the trial court,’ Ex parte Ingram, 51 So.3d at 1122, applies, and no error resulted from the circuit court’s adoption of the State’s proposed order.
[[Image here]]
“Next, Jenkins’s argument that the circuit court did not make independent findings of facts or conclusions of law because it lacked sufficient time to review all the records, pleadings, and the *1259 24-page proposed order in the short time between receiving the State’s proposed order and adopting the order is based on the assumption that the circuit court was idle during the 55 days between when Jenkins filed his Rule 32 petition and when the circuit court dismissed the petition. Jenkins filed his Rule 32 petition on October 1, 2008. The State filed its answer and motion to dismiss Jenkins’s petition on October 31, 2008. The circuit court signed its order denying relief on November 25, 2008. Almost two months elapsed between the filing of Jenkins’s petition and the circuit court’s issuing its order. Contrary to Jenkins’s assertion, 55 days provided plenty of time for the circuit court to independently review the records and the pleadings filed by the parties.”
Jenkins, 105 So.3d at 1240-42 (footnote omitted).
Jenkins points to the following facts to suggest that the trial judge signed the proposed order without carefully reading and verifying it and that the order is not a product of the trial court’s independent judgment:
1. The judge who presided over the successive Rule 32 proceedings was new to Jenkins’s case and was unfamiliar with the case, including the capital-murder trial and the initial Rule 32 proceedings;
2. Although the judge may have been aware of the few pleadings filed in the successive Rule 32 proceedings, at no point during the brief pendency of this case did the judge review the trial transcripts, the initial Rule 32 hearing transcripts, or the prior pleadings in this case;
3. The judge received, unsolicited, a proposed order from the State. The order was 24 pages long and contained more than 30 citations to the trial transcript or the initial Rule 32-proceeding transcript. The order made credibility determinations that were adverse to Jenkins, purported to deny all relief in the case, and noted that Jenkins would have 42 days from the signing of the order to file a notice of appeal;
4. Within hours of receiving the State’s order, the judge signed it without changing a word;
5. One week after adopting verbatim the State’s proposed order, the same trial judge granted Jenkins’s previously filed motion to respond to the State’s answer and motion to dismiss, ordering Jenkins to respond within 45 days. The trial judge entered and signed the order in his own handwriting on the “case action summary,” immediately below a clerk’s entry indicating that the ease had already been dismissed.
Crucial to Jenkins’s argument that the trial judge signed the proposed order without reading it carefully and without verifying its contents is his contention that the trial judge signed the order within hours of receiving it. This contention is based on Jenkins’s “belief’ that the earliest the trial judge could have seen the proposed order would have been Tuesday, November 25, 2008, the date the order was signed in Ashville,[4] because, as explained above, the trial judge was sitting in Pell City the previous day. Also crucial to Jenkins’s argument is his contention that the trial judge had not reviewed the records from his prior trial and Rule 32 proceedings. Neither of these crucial contentions to Jenkins’s argument are founded upon facts *1260 contained in the record, and they amount to only speculation and conjecture. Nothing in the record indicates when the trial judge received the proposed order or where he was sitting on November 24 and 25, 2008. Additionally, nothing in the record indicates that the trial judge did not review the transcripts from Jenkins’s prior proceedings. It is well settled that this Court cannot consider arguments founded on matters not contained in the record. Etherton v. City of Homewood, 700 So.2d 1374 (Ala.1997).
The circumstances of this case differ from the circumstances presented in Ex parte Ingram and Ex parte Scott. In both of those cases it was clear from evidence before this Court that the orders signed by the trial court were not the product of the trial court’s independent judgment. In Ingram, that fact was clear from the statements contained in the order regarding the trial judge’s “personal knowledge” and observations of Ingram’s capital-murder trial when the trial judge signing the proposed Rule 32 order did not reside over Ingram’s capital-murder trial. In Ex parte Scott, that fact was clear from the materials before this Court, which contained the State’s responsive pleading adopted by the trial court as its order. In this case, however, there is nothing definitive in the record or on the face of the order that indicates that the order is not the product of the trial court’s independent judgment.[5]
In granting the petition for writ of cer-tiorari in this case, this Court was concerned by Jenkins’s allegation that the trial court had signed the proposed order submitted by the State without first carefully reviewing the order and the record of the prior proceedings. This allegation has not been substantiated by the record. Although the issue raised by Jenkins is a close one, without more, we must agree with the Court of Criminal Appeals’ conclusion that Jenkins’s argument as to this issue “[assumes] that the circuit court was idle during the 55 days between when Jenkins filed his Rule 32 petition and when the circuit court dismissed the petition.” 105 So.3d at 1242.
This Court’s decision today should not be read as entitling a petitioner to relief in only those factual scenarios similar to those presented in Ex parte Ingram and Ex parte Scott. A Rule 32 petitioner would be entitled to relief in any factual scenario when the record before this Court clearly establishes that the order signed by the trial court denying postconviction relief is not the product of the trial court’s independent judgment. See Ex parte Ingram.

Conclusion

On February 7, 2012, this Court granted Jenkins’s petition for a writ of certiorari only as to the ground challenging the Court of Criminal Appeals’ affirmance of the trial court’s order dismissing Jenkins’s Rule 32 petition on the bases that the trial court adopted verbatim the State’s proposed order, and we held in abeyance the other grounds raised in Jenkins’s petition pending resolution of this issue. We now *1261 affirm the Court of Criminal Appeals’ judgment insofar as it upholds the trial court’s adoption of the State’s proposed order denying Jenkins’s Rule 32 petition; as to the remaining grounds we now deny the petition for a writ of certiorari.
AFFIRMED AS TO GROUND ON WHICH CERTIORARI REVIEW WAS GRANTED; WRIT DENIED AS TO REMAINING GROUNDS.
MALONE, C.J., and WOODALL, STUART, PARKER, MURDOCK, and SHAW, JJ., concur.
MAIN and WISE, JJ., recuse themselves.*

. This Court held in abeyance the remaining grounds raised in the certiorari petition pending the disposition of this issue.

. Jenkins states that following the trial court’s denial of this Rule 32 petition, the parties litigated the completeness of the record on appeal and that this litigation was presided over by Judge Robert E. Austin.

. On October 2, 2008, Jenkins moved the federal district court to stay his habeas proceedings to allow him to file another Rule 32 petition reasserting his juror-misconduct claim in light of this Court’s decision in Ex parte Burgess. On November 12, 2008, the federal district court granted Jenkins’s motion to stay his habeas proceedings.

. As stated above, the State’s proposed order was mailed on Friday November 21, 2008, to the courthouse in Ashville.

. Jenkins asks this Court to remand this case for an evidentiary hearing as to the factual circumstances surrounding the trial court's signing of the proposed order. This, however, is not contemplated by the decisions in Ex parte Ingram and Ex parte Scott. Jenkins cites this Court to Jefferson v. Upton, - U.S. -. 130 S.Ct. 2217. 176 L.Ed.2d 1032 (2010), in support of his request for a full evidentiary hearing on the issue of the proposed order. However, Jefferson is distinguishable because it involved a federal habeas petition in which a full evidentiary hearing was permitted as to the facts pertinent to the habeas application.