WR-81,570-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/9/2015 12:31:08 PM
Accepted 2/9/2015 1:47:35 PM
ABEL ACOSTA
CLERK

# IN THE TEXAS COURT OF CRIMINAL APPEALS
## AUSTIN, TEXAS

RECEIVED
COURT OF CRIMINAL APPEALS
2/9/2015
ABEL ACOSTA, CLERK

_____   )   **Writ No.**
                                  )   **WR-81,570-01**
**EX PARTE**                      )
**TEDDRICK BATISTE,**             )
     **APPLICANT**   )
                                  )
_____   )


# APPLICANT'S REQUEST FOR REMAND TO CONDUCT
# PROCEEDINGS CONSISTENT WITH ARTICLE 11.071

BRAD D. LEVENSON (No. 24073411)
Director, Office of Capital Writs
(E-mail: Brad.Levenson@ocw.texas.gov)
RYAN CARLYLE KENT (No. 24090205)
(E-mail: Ryan.Kent@ocw.texas.gov)
Post-Conviction Attorney
Office of Capital Writs
1700 N. Congress Avenue, Suite 460
Austin, Texas 78701
(512) 463-8600
(512) 463-8590 (fax)

Attorneys for Applicant

1

**IN THE TEXAS COURT OF CRIMINAL APPEALS**
**AUSTIN, TEXAS**

_____

                     )      **Writ No.**

**EX PARTE**              )      **WR-81,570-01**

**TEDDRICK BATISTE,**     )

         **APPLICANT**     )

                     )

_____  )

## APPLICANT'S REQUEST FOR REMAND TO CONDUCT PROCEEDINGS CONSISTENT WITH ARTICLE 11.071

Teddrick Batiste ("Batiste"), by and through his attorneys, the Office of Capital Writs ("OCW"), respectfully requests that this Court remand Batiste's application for writ of habeas corpus and related materials to the convicting court with direction to conduct a full and adequate fact-finding process consistent with Article 11.071 in order to address the numerous controverted, material issues of fact that remain unresolved in Batiste's post-conviction litigation.

### A.    Procedural History

On May 1, 2013, Batiste filed his Initial Application for Writ of Habeas Corpus ("Application" or "App.") alleging seventeen points of error, including thirteen claims of ineffective assistance of trial counsel.[1] The State filed its Answer on November 5, 2013. In its Answer, the State broadly "denie[d] the factual allegations made in [Batiste's] application, except those supported by

---

[1] Those are Claims One through Nine, Claims Eleven through Thirteen, and Claim Sixteen.

official court documents." (Answer at 1.) The convicting court[2] then ordered trial counsel R.P. "Skip" Cornelius and Gerald E. Bourque to file affidavits responding to the Application, which they did on February 5, 2014.[3]

At a status conference on September 26, 2014, the court denied Batiste's request for an evidentiary hearing and orally ordered both parties to file proposed findings of fact and conclusions of law by December 1, 2014, which deadline later was extended (at the State's request) to December 15, 2014. The court also issued written orders to the same effect. Argument on the parties' proposed findings of fact and conclusions of law was heard on December 22, 2014. On January 21, 2015, and in full, the court adopted the State's proposed findings of fact and conclusions of law ("Convicting Court's Findings").

**B.     The Convicting Court Did Not Employ a Fact-Finding Procedure Adequate for Reaching a Reasonably Correct Result**

In *Ex parte Davila*, this Court observed that the standard to which post-conviction proceedings are to be held is whether " 'the fact-finding procedure there employed was . . . adequate for reaching reasonably correct results.' " 530 S.W.2d 543, 545 (Tex. Crim. App. 1975) (quoting *Townsend v. Sain*, 372 U.S. 293, 316 (1963)) (ellipsis in original). While it is conceivable that a convicting court could adopt in full the State's proposed findings of fact and conclusions of law and not run afoul of this "necessarily flexible standard," *id.*, this is not such a case.

---

[2] In this Request for Remand the phrases "the convicting court" and "the court" are interchangeable and refer to the lower court. By contrast, the phrase "this Court" refers to the Court of Criminal Appeals from which remand now is sought.

[3] Batiste filed a response to his former counsel's affidavits on or about April 3, 2014.

The convicting court's treatment of Claim One—that is, Batiste's trial counsel were ineffective for failing to present evidence that their client has damage to his frontal lobe which affects impulsivity and risk-taking behavior—illustrates the inadequacy of its fact finding. A threshold question to this claim is whether Batiste actually has an impaired frontal lobe. On one side of the argument is an accredited neuropsychologist, Dr. James Underhill, who administered to Batiste a comprehensive neuropsychological evaluation.[4] In addition, Dr. Underhill interviewed Batiste regarding his family background; personal history and experiences; and current physical, medical, and emotional state. He also reviewed Batiste's juvenile detention and probation records; jail disciplinary records; jail medical records; school records; testimony from family members and other mitigation witnesses during the punishment phase of Batiste's trial; testimony of the State's witness Scott Krieger; and online newspaper articles which provided details of the offenses for which Batiste was indicted. (App. Ex. 1 at ¶13 [Aff. of Dr. James Underhill].) Based upon these materials and this wealth of information, Dr. Underhill concluded that "Mr. Batiste suffers from damage to his frontal lobe, specifically with regard to the part of the prefrontal cortex that controls risk taking." (*Id.* at ¶23.)

In its Answer, the State proffered no evidence to rebut Dr. Underhill's conclusion. It hired no expert of its own, nor did it challenge Dr. Underhill's credentials. Instead, the State argued against Dr. Underhill's conclusion on three

---

[4] (*See* App. Ex. 1 at ¶21 [Aff. of Dr. James Underhill] (referring to "a series of tests" administered to Batiste, tests which were "selected to evaluate his sensory, motor, attention, memory, language, visual-perceptual organization and executive functioning"); *see also id.* at ¶22 ("Among other tests, I administered portions of the Meyers' Neuropsychological Battery [], which is a comprehensive standardized neuropsychological testing battery.").)

4

specious grounds, all of which have become part of the official record in this case by the convicting court's credulous acceptance of the State's proposed findings.

First, the State claimed that Dr. Underhill's conclusion was "vague" because he had not "disclose[d] the applicant's specific score" on one of the many tests he administered to Batiste. (Convicting Court's Findings at 17.) But if vagueness was a problem in this instance—and there is no suggestion within Dr. Underhill's affidavit that his conclusion hinged on a single score from a single test—it could hardly be cured by truncating the fact-finding process. This the court did by refusing to hold an evidentiary hearing (and at the State's urging, no less). A fact-finding procedure is inadequate to reach "reasonably correct results" when, as here, the fact-finder rests a factual determination (to paraphrase: "Dr. Underhill's conclusion is unpersuasive") on an ambiguity that the fact-finder was empowered to resolve.[5]

---

[5] The convicting court cites to *Ex parte Reed*, 271 S.W.3d 698, 747 (Tex. Crim. App. 2008), for the proposition that an "affidavit filed in support of [a] writ of habeas corpus [is] not credible when it lacked specific facts which could be corroborated." (Convicting Court's Findings at 17-18.) The citation is curious in that Dr. Underhill's affidavit bears no resemblance to the unsworn statement dismissed as incredible in *Ex parte Reed*.

In *Ex parte Reed*, the statement at issue was that of a layperson claiming personal knowledge of a romantic relationship between a murder victim and the defendant held responsible for her death. The "specific facts" asserted by the witness included *inter alia* that the witness had seen the defendant and victim together, "kissing and calling each other 'baby' "; that the witness saw the defendant after the victim's murder, at which time he seemed sad and angry; and that the defendant had told the witness (while both were being held at the Bastrop County Jail) that he was innocent of the victim's murder. *Ex parte Reed*, 271 S.W.3d at 746.

This Court decided not to credit these assertions for reasons inapplicable to Dr. Underhill's affidavit on behalf of Batiste: (1) the witness's statement was not sworn, whereas Dr. Underhill signed a sworn affidavit; (2) the witness's statement conflicted with uncontroverted evidence adduced at Reed's trial, whereas Dr.

Second, the convicting court misunderstands Batiste's argument concerning the management of his condition. In its verbatim recitation of the State's proposed findings, the court writes: "Dr. Underhill's conclusions [are] unpersuasive, given the applicant's state jail records reflecting that the applicant had no disciplinaries while incarcerated at the Lynchner Unit which indicated that the applicant could control his behavior, including risk taking behavior, when he so chose without medication." (Convicting Court's Findings at 18.) Both Batiste's application and Dr. Underhill's affidavit make clear that "there are several ways that [frontal lobe damage] can be treated and controlled within a prison environment," including medication *and the controlled nature of prison environment itself.* (App. at 27-28; App. Ex. 1 at ¶¶34-35 [Aff. of Dr. Underhill].) Batiste's ability to conform to prison rules absent medication neither weakens his claim for relief nor does it undercut Dr. Underhill's conclusion, for neither the claim nor the conclusion depend on medication being necessary to treat frontal lobe damage. This Court ought to question a fact-finding procedure—again, one truncated by the convicting court's refusal to grant an evidentiary hearing or to order depositions, interrogatories, or additional affidavits, *see* TEX. CODE CRIM. PROC. art. 11.071, § 9(a)—whose end result is predicated, in part, on elementary confusion between what is helpful to bring about a certain result and what is necessary.

Third, the convicting court regards Dr. Underhill's conclusion as cumulative of the testimony offered by State's witness Scott Krieger, a psychologist who examined a sixteen-year-old Batiste while working for the Texas Youth Commission. But Mr. Krieger administered only three tests to Batiste—the

Underhill's conclusions are consistent with (but not duplicative of) the evidence adduced at Batiste's trial; and (3) the witness's assertions were "general" and could not be corroborated, whereas Dr. Underhill reached his conclusions partly through a battery of tests whose precision and efficacy are well established among neuropsychologists.

Minnesota Multiphasic Personality Inventory designed for adolescents, the Beck Depression Inventory, and the Substance Abuse Subtle Screening Inventory (18 RR at 42-43)—none of which is designed to uncover brain damage. Further, Mr. Krieger only offered that a young Batiste "was impulsive and preferred action over thought and reaction" (Convicting Court's Findings at 18), testimony which speaks only in terms of effects and not causes.[6] The jury which sentenced Batiste to death therefore lacked information critical to understanding why Batiste failed to behave responsibly and to make good decisions throughout his life. If the standard articulated in *Ex parte Davila* is to have any value, this Court ought not countenance a procedure whose end result dismisses as "cumulative" such new and explanatorily powerful information.

This Court and the United States Supreme Court have criticized lower courts' practice of adopting wholesale the allegations and conclusions offered by the State during post-conviction proceedings. *Jefferson v. Upton*, 560 U.S. 284, 293-94 (2010); *Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985); *Ex parte Reed*, 271 S.W.3d 698, 729 (Tex. Crim. App. 2008). In addition to unnecessarily complicating this Court's independent review of the record, *Ex parte Reed*, 271 S.W.3d at 698, the practice raises serious doubts concerning the fairness of the proceedings intended to ensure that this State's most severe punishment has been lawfully assigned. As noted at the onset, the convicting court's poorly justified dismissal of Dr. Underhill's conclusion that Batiste suffers from damage to his frontal lobe illustrates the inadequacy of the procedures in this case. Still, remand to the convicting court to conduct adequate proceedings (e.g., supplementary

---

[6] By analogy, the assertion that Dr. Underhill's conclusion is cumulative of (and therefore no more informative than) Mr. Krieger's testimony makes as much logical sense as perceiving no difference between "The car is wet" and "The car is wet because it was left in the rain" or "The car is wet because it recently was washed."

affidavits, interrogatories, evidentiary hearing) regarding Claim One alone would go a long way toward vindicating Batiste's rights to a "full and fair opportunity to present his constitutional . . . claims." *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002).[7]

## C.    Batiste's Application Should Be Remanded to the Convicting Court

The whole of Article 11.071 is "built upon the premise that a death row inmate [has] one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute." *Ex parte Kerr*, 64 S.W.3d at 419; *accord Ex parte Medina*, 361 S.W.3d 633, 642 (Tex. Crim. App. 2011). Absent a more searching inquiry into the allegations raised in Batiste's Application, and through its adoption of the State's proposed findings of fact and conclusions of law despite that proposal's severe infirmities, the

---

[7] This practice of adopting the State's proposed findings of fact and conclusions of law essentially verbatim is not limited to Batiste's case but appears to be a regular occurrence among the convicting courts of this State. *See Ex parte Cortne Robinson*, Harrison County, WR-81,583-01 (findings signed Aug. 25, 2014); *Ex parte Kwame Rockwell*, Tarrant County, WR-80,232-01 (Sept. 9, 2014); *Ex parte Mark Soliz*, Johnson County, WR-82,429-01 (Nov. 6, 2014); *Ex parte Garland Harper*, Harris County, WR-81,576-01 (Dec. 11, 2014); *Ex parte Gary Green*, Dallas County, WR-81,575-01 (Dec. 31, 2014); *Ex parte Juan Ramirez*, Hidalgo County, WR-71,401-01 (Jan. 20, 2015); *Ex parte John Hummel*, Tarrant County, WR-81,578-01 (Jan. 21, 2015). That such a practice has become commonplace in the review of capital defendants' applications for writ of habeas corpus suggests Texas's death penalty statutory scheme no longer functions as an independent and impartial system but, instead, effectively denies capital defendants (like Batiste) their due process rights under the United States and Texas Constitutions. Worse still, and as the instant pleading has endeavored to show, the practice undermines—to a degree intolerable—the accuracy of the post-conviction review process. At minimum, then, this Court should issue an opinion warning lower courts of the dangers to adopting wholesale the State's proposed findings of fact and conclusions of law.

convicting court effectively has deprived Batiste of that opportunity which Article 11.071 is intended to furnish. Accordingly, Batiste requests that this Court remand the Application to the convicting court with instruction to proceed according to Section 9 of Article 11.071.

Pursuant to that section, the convicting court should be instructed to enter an order designating the controverted and material issues of fact to be resolved, and then to resolve those issues in the manner set out in Section 9. Only then will Batiste be provided his "one full and fair opportunity" to present his claims. *Ex parte Kerr*, 64 S.W.3d at 419.

Respectfully submitted,

DATED:    February 9, 2015

_____
Ryan Carlyle Kent
Post-Conviction Attorney

9

# CERTIFICATE OF SERVICE

I, the undersigned, declare and certify that I have served the foregoing Applicant's Request for Remand to Conduct Proceedings Consistent with Article 11.071 upon:

Court of Criminal Appeals
P.O. Box 112308
Austin, Texas 78711
(Original by e-file)

Harris County District Attorney
Attn: Joshua A. Reiss
1201 Franklin Street, 6th Floor
Houston, Texas 77002
(One copy by e-file)

Teddrick Batiste
TDCJ No. 999568
TDCJ Polunsky Unit
3872 FM 350 South
Livingston, TX 77351
(One copy)

This certification is executed on February 9, 2015, at Austin, Texas.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Ryan Carlyle Kent