WR-83,135-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/7/2015 11:55:17 AM
Accepted 5/7/2015 12:57:06 PM
ABEL ACOSTA
CLERK

# IN THE TEXAS COURT OF CRIMINAL APPEALS
## AUSTIN, TEXAS

RECEIVED
COURT OF CRIMINAL APPEALS
5/7/2015
ABEL ACOSTA, CLERK

_____ )

**EX PARTE** )

**BARTHOLOMEW GRANGER,** )

**APPLICANT** )

)

_____ )

**Writ No.**
**WR-83,135-01**

## APPLICANT'S OBJECTIONS TO THE CONVICTING COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

BRAD D. LEVENSON (No. 24073411)
Director, Office of Capital Writs
(E-mail: Brad.Levenson@ocw.texas.gov)
DEREK VERHAGEN (No. 24090535)
(E-mail: Derek.VerHagen@ocw.texas.gov)
RYAN CARLYLE KENT (No. 24090205)
(E-mail: Ryan.Kent@ocw.texas.gov)
Post-Conviction Attorneys
Office of Capital Writs
1700 N. Congress Avenue, Suite 460
Austin, Texas 78701
(512) 463-8600
(512) 463-8590 (fax)

Attorneys for Applicant

**IN THE TEXAS COURT OF CRIMINAL APPEALS**
**AUSTIN, TEXAS**

_____
                   )      Writ No.

EX PARTE               )      WR-83,135-01

BARTHOLOMEW GRANGER,   )

       APPLICANT          )

                              )

_____ )

### APPLICANT'S OBJECTIONS TO THE CONVICTING COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Bartholomew Granger ("Granger"), by and through his attorneys, the Office of Capital Writs ("OCW"), respectfully requests that this Court remand Granger's application for writ of habeas corpus and related materials to the convicting court with direction to conduct a full and adequate fact-finding process consistent with Article 11.071 in order to address the numerous controverted, material issues of fact that remain unresolved in Granger's post-conviction litigation.

### A.     Procedural History

On May 10, 2013, the convicting court[1] appointed the OCW to represent Granger in his post-conviction habeas litigation, pursuant to Article 11.071 of the Code of Criminal Procedure. On October 28, 2014, Granger filed his Initial Application for Writ of Habeas Corpus ("Application" or "App.") alleging ten points of error, including five claims of ineffective assistance of trial counsel and

---

[1] In the instant pleading, the phrases "the convicting court" and "the court" are interchangeable and refer to the lower court. By contrast, the phrase "this Court" refers to the Court of Criminal Appeals from which remand now is sought.

one claim of juror misconduct.[2]  The State filed its Answer ("Answer" or "Ans.") on February 9, 2015.  In its Answer, the State broadly "denie[d] the factual allegations made in [Granger's] application, except those supported by official court records" (Ans. at 2), and it included as exhibits affidavits from Granger's trial counsel (Ans. Exs. 1-2).

Approximately two weeks later, on February 23, 2015, the convicting court entered an order finding "that no controverted, previously unresolved factual issues material to the legality of [Granger's] confinement exist," and it ordered the parties to file proposed findings of fact and conclusions of law by March 24, 2015.  On February 27, 2015, Granger moved the court to reconsider its order, which motion was denied on March 2, 2015.  After the parties filed their proposed findings of fact and conclusions of law, Granger moved the court to grant argument on those proposals, citing multiple factual and legal errors within the State's submission.  On March 31, 2015, the State filed a five-page response to Granger's motion, as well as an amended proposal which corrected one of the errors which Granger had identified.  The convicting court denied Granger's request for argument on April 2, 2015, and four days later signed in full the State's amended proposal.

**B.    The Convicting Court Did Not Employ a Fact-Finding Procedure Adequate for Reaching a Reasonably Correct Result**

In *Ex parte Davila*, this Court observed that the standard to which post-conviction proceedings are to be held is whether "'the fact-finding procedure there employed was . . . adequate for reaching reasonably correct results.'"  530 S.W.2d 543, 545 (Tex. Crim. App. 1975) (quoting *Townsend v. Sain*, 372 U.S. 293, 316 (1963)) (ellipsis in original).  The fact-finding process in Granger's case has been

---

[2] The ineffective assistance claims are Claims One through Five; the juror misconduct claim is Claim Six.

anything but reasonable: questions remain unanswered as to whether the State withheld compelling evidence from trial counsel, in violation of *Brady v. Maryland* (*see* subsection B-1, *post*); the State's Answer and trial counsel's affidavits mischaracterize—and thereby betray a fundamental misunderstanding of—the Application's Claim One (*see* subsection B-2, *post*); and trial counsel included provably false statements in their affidavits (*see* subsection B-3, *post*). And although an evidentiary hearing would have provided the convicting court with an opportunity to answer these questions, to clarify the State's response to Claim One, to assess counsel's credibility notwithstanding their erroneous affidavits, and to correct for so many other infirmities not specifically mentioned in the instant pleading, the court declined to hold such a hearing.[3]

### 1. Granger's Daughter's Journal: Evidence of Ineffectiveness or of Prosecutorial Misconduct Pursuant to *Brady v. Maryland*?

Throughout Granger's capital trial, both the State and the defense repeatedly referred to a journal kept by Granger's daughter around the time when Granger was alleged to have sexually assaulted her.[4] (18 RR at 36-38; 23 RR at 19-20,

---

[3] Whereas Section 9 of Article 11.071 explicitly authorizes the convicting court to rely on its "personal recollection" to resolve "controverted . . . factual issues material to the legality of the applicant's confinement," Section 8 makes no mention of the court's personal recollection when it comes to that first-order consideration as to whether the aforesaid issues exist. Supposing a convicting court could rely on its personal recollection to deny a habeas applicant an evidentiary hearing, such reliance is impossible in Granger's case because the judge who presided over Granger's capital trial is different from the judge who dispensed with Granger's Application. Accordingly, the only evidence available to the court to decide the issues raised in Granger's Application was the record, the parties' filings, and trial counsel's three-page affidavits.

[4] Prior to the shooting, which took place outside of the Jefferson County Courthouse on March 14, 2012, Granger's daughter Samantha Jackson had accused both her father and her uncles of sexual abuse, for incidents alleged to have occurred in 2005, 2006, and 2007. On the second day of the aggravated

125-26, 130-31, 139, 175-76, 182-85; 26 RR at 99-100.)[5] Had trial counsel discovered Samantha Jackson's journal, they could have presented compelling evidence to raise doubts in the jurors' minds as to whether these allegations were true.[6] This would have served to rebut a particularly prejudicial extraneous offense and fed into a larger mitigation narrative about Granger's inability to cope with the pressure of dealing with false sexual assault allegations against him and his family. (*See* App. at 40-43, 56-61.)

Counsel were aware that the journal contained statements favorable to Granger and that Granger had the journal in his briefcase the day before the shooting, but they were unable to locate it. (App. at 64-65.) During the post-conviction investigation, the OCW discovered the journal inside of Granger's briefcase, which was held in evidence at the Jefferson County District Attorney's Office. In his Application, Granger submitted the journal as an exhibit and alleged that trial counsel were ineffective for failing to discover the journal during their pre-trial investigation. (*See* App. at 62-70.) Granger also argued—in the alternative, and on the assumption that counsel had examined Granger's briefcase prior to trial but that the briefcase did not contain the journal—that the State

---

sexual assault trial against Granger, Granger shot at Jackson, her mother, and Granger's ex-wife as they walked toward the courthouse. A bystander, Minnie Rae Sebolt, was shot and killed, and her death gave rise to the capital murder conviction now before this Court.

[5] All references to "RR" are to the Reporter's Record.

[6] As discussed in the Application's Claim Three, the journal—which Jackson kept after the time period in which she alleges to have been sexual assaulted by her father and uncles (App. at 65-67, 66 n.11)—makes no mention of any abuse, speaks positively about Jackson's relationship with her father, and records her self-assessment that "I need to see someone so I can control myself. What I mean by 'control' is not hurting someone." (*Id.* at 65-70 (quoting App. Ex. 23 at 9 [Samantha Jackson's Journal]).)

5

committed misconduct by failing to turn over arguably exculpatory evidence, in violation of *Brady v. Maryland*. (App. at 65 n.10.)

The record in this case, as presently constituted, cannot resolve the open questions which might be answered in such a fashion as to establish that Granger's due process rights were violated. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). For their part, trial counsel in their affidavits claim to have spoken with Rife Kimler, Granger's attorney for the aggravated sexual assault case, and Judge John B. Stevens, Jr., the judge who presided over that case, but neither Mr. Kimler nor Judge Stevens could locate the journal. (Ans. Ex. 1 at 2 [Aff. of James R. Makin]; Ans. Ex. 2 at 2 [Aff. of C. Haden Cribbs, Jr.].) Further, neither the State (in its Answer) nor trial counsel (in their affidavits) have endeavored to explain how a pivotal piece of mitigating evidence could have been in the State's possession but never disclosed to—let alone reviewed by—Granger's counsel.[7]

Despite these questions remaining unanswered, the convicting court persisted in its determination "that no controverted, previously unresolved factual issues material to the legality of [Granger's] confinement exist." (Order, *Ex parte Bartholomew Granger*, No. 13-16388 (58th Dist. Ct., Jefferson County, Tex. Feb. 23, 2015).) Instead, the court signed the State's proposed findings of fact and

---

[7] The State's Answer suggests that "a jury might consider [the journal] for aggravating purposes." (Ans. at 22-23.) The State offers no reason to believe that the journal's contents could be refashioned as aggravating evidence, and counsel so readily accept the value of the journal to Granger's defense that, in their affidavits, they imagined having used what was known of its contents in their cross-examination of Jackson. *See* subsection B-3, *post* (explaining that, contrary to the State's Answer and trial counsel's affidavits, trial counsel did not cross-examine Granger's daughter on the contents of the journal).

6

conclusions of law, and that proposal—much like the Answer which preceded it—failed to address Granger's contention that the State may have contravened *Brady* by withholding the journal from his trial counsel.

## 2. The State's Mischaracterization and Misunderstanding of the Application's Claim One

In the first claim to his Application, Granger alleges that his trial counsel were ineffective for failing to investigate and present readily available mitigating evidence at the punishment phase of trial. (App. at 28.) In support of this claim, Granger produced a sworn affidavit from the trial team's mitigation specialist—a licensed social worker with ten years' experience—which affidavit detailed the mitigation specialist's limited interactions with trial counsel and the several themes she had identified and developed in her investigation. (App. Ex. 2 [Aff. of Norma Villanueva].) In particular, the mitigation report advised the following narratives:

- The heavy toll that the sexual assault allegations took on Granger, whose mental state increasingly deteriorated in the years, months, and weeks leading up to the shooting.

- The impact that the death of Granger's sister, Samantha, had on him and the rest of the Granger family. In addition to being a traumatic event for Granger, investigation revealed that the Granger family believed Samantha's murder was not investigated by authorities, and, as a result, they felt victimized by the criminal justice system. Granger's mother, Vallire, instilled a level of distrust in her sons, which led to increased isolation and a high level of paranoia.

- The extreme domestic violence against Granger's mother while she was pregnant with Granger and throughout his childhood, and the effects that had on Granger's development.

(*See* App. Ex. 2 at Attachment [Aff. of Ms. Villanueva].)

None of these mitigation themes were presented at the punishment phase of Granger's trial. Despite their availability and evidence to support them, trial

7

counsel relied on punishment phase evidence developed by their fact investigator, the former chief of the Beaumont Police Department, then working as a private investigator on his first capital case. As one might expect under these circumstances, *see generally* ABA, *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 HOFSTRA L. REV. 677 (2008); State Bar of Tex., *Supplementary Guidelines and Standards for the Mitigation Function of Defense Teams in Texas Death Penalty Cases*, 78 TEX. B.J. (forthcoming July 2015), the evidence compiled by the fact investigator was underdeveloped and unpersuasive.[8]

Trial counsel's five-sentence response to Claim One focuses exclusively on their decision not to call their mitigation specialist to testify. They ignore the core

---

[8] The full text of Guideline 5.1(C) is instructive:

> Mitigation specialists must be able to identify, locate and interview relevant persons in a culturally competent manner that produces confidential, relevant and reliable information. They must be skilled interviewers who can recognize and elicit information about mental health signs and symptoms, both prodromal and acute, that may manifest over the client's lifetime. They must be able to establish rapport with witnesses, the client, the client's family and significant others that will be sufficient to overcome barriers those individuals may have against the disclosure of sensitive information and to assist the client with the emotional impact of such disclosures. They must have the ability to advise counsel on appropriate mental health and other expert assistance.

ABA, *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 HOFSTRA L. REV. 677, 682 (2008); *see also* State Bar of Tex., *Supplementary Guidelines and Standards for the Mitigation Function of Defense Teams in Texas Death Penalty Cases*, 78 TEX. B.J. (forthcoming July 2015) (Guideline 4.1(C)) (same). No evidence has been adduced to suggest that the defense's fact investigator possessed training or experience commensurate with the standards set forth in this Guideline.

of Claim One which alleges ineffectiveness "for failing to investigate and present readily available mitigating evidence," evidence developed by their qualified mitigation specialist and presented to them prior to trial. (App. at 17, 25.) As a consequence of counsel's failure, the jurors which sentenced Granger to death were presented with a disjointed and poorly-informed mitigation narrative. (*See id.* at 26-28.) The State's Answer suffers from the same myopia (Ans. at 12), but also appears to miss the point entirely by discussing counsel's defensive theory during the guilt/innocence phase (*id.* at 14).

Under Article 11.071, the convicting court has an obligation to resolve material, contested issues through the various fact-finding measures specified in the statute. Given trial counsel's and the State's misunderstanding of Claim One—a misunderstanding evinced by their affidavits and its Answer, respectively—the pleadings in this case are inadequate to answer important questions relevant to Granger's confinement under a sentence of death. For example:

- What actions did counsel take to "fully investigate all family members and evaluate[] all information," as alleged in their affidavits?

- Were counsel in contact with the mitigation specialist during the investigation period? If so, to what extent?

- Were counsel aware of the several themes which the mitigation specialist identified? If so, how familiar were they with those themes?

- Which aspect(s) of the fact investigator's background led counsel to believe that he was qualified to conduct a mitigation investigation in a capital murder case?

- Which aspect(s) of the fact investigator's background led counsel to rely on him in lieu of their more experienced and better qualified mitigation specialist?

Only after these questions have been answered can the convicting court reasonably determine "the adequacy of the investigations supporting [counsel's] judgments" and, correspondingly, "the deference owed such strategic judgments." *See Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003).

### 3. Trial Counsel's Affidavits Contain Multiple Inaccuracies, Only One of Which Has Been Acknowledged by the State

As illustrated by subsections B-1 and B-2, *ante*, trial counsel's affidavits fail to address important allegations raised in Granger's Application. On its own, this failure would necessitate an evidentiary hearing. In Granger's case, however, counsel's affidavits are worse than incomplete—they are provably false, and then to such a degree that even the State has conceded the point. Specifically, whereas trial counsel maintain that they "cross-examined Mr. Granger's daughter on the contents and statements [within her journal]," (Ans. Ex. 1 at 2 [Aff. of Mr. Makin]; Ans. Ex. 2 at 2 [Aff. of Mr. Cribbs]), the trial transcript belies these assertions (*see* 20 RR at 75; 26 RR at 103-17).

These inaccuracies in trial counsel's affidavits were first identified by Granger in a Motion to Reconsider, which he filed with the convicting court on February 27, 2015. (Applicant's Motion to Reconsider Order Signed February 23, 2015, *Ex parte Bartholomew Granger*, No. 13-16388, at 9 (58th Dist. Ct., Jefferson County, Tex. Feb. 27, 2015).) One month later, the inaccuracies again surfaced in the State's Proposed Findings of Fact and Conclusions of Law; once more, Granger brought them to the court's attention, this time in a Motion to Request Argument Concerning the Parties' Proposed Findings and Conclusions. (Applicant's Motion to Request Argument Concerning the Parties' Proposed

10

Findings and Conclusions, *Ex parte Bartholomew Granger*, No. 13-16388, at 2-3 (58th Dist. Ct., Jefferson County, Tex. Apr. 1, 2015).)) Upon receipt of this motion, the State finally "acknowledge[d] that the trial attorney's [sic] recollections regarding whether that questioning occurred during cross-examination, as stated in their affidavits . . . are not correct." (*See* State's Response to Applicant's Request for Oral Arguments Concerning Proposed Findings and Conclusions, *Ex parte Bartholomew Granger*, No. 13-16388, at 3 (58th Dist. Ct., Jefferson County, Tex. Mar. 31, 2015).)

The State went on to argue that "[t]his [inaccuracy] does not change the other credible assertions made by trial counsel therein." (*Id.*) But if counsel were mistaken as to the subject matter of their cross-examination of Granger's daughter—and they were mistaken—then the credibility deserved their other self-serving assertions necessarily diminishes. For example, in their response to Claim One trial counsel claim to have "fully investigate[d] all family members and evaluated all information," and they further claim to have "personally talked with numerous family members and knowledgeable parties." (Ans. Ex. 1 at 1-2 [Aff. of Mr. Makin]; Ans. Ex. 2 at 1-2 [Aff. of Mr. Cribbs].) In response to Claim Two, counsel likewise claim that their decision not to call an expert to explain the impact of Granger's social history was informed by their "[e]valuation of all known facts, Mr. Granger's statements and the veracity of all parties." (Ans. Ex. 1 at 2 [Aff. of Mr. Makin]; Ans. Ex. 2 at 2 [Aff. of Mr. Cribbs].) None of these assertions should be presumed correct. Moreover, and unlike statements which may be tested by reference to the trial transcript, these and other statements offered by Granger's counsel only may be tested through the fact-finding process which Article 11.071 permits but which the convicting court truncated.

**C.     The Convicting Court Erred in Signing Wholesale the State's Proposed Findings of Fact and Conclusions of Law**

Both this Court and the U.S. Supreme Court have criticized lower courts' practice of adopting wholesale the allegations and conclusions offered by the State during post-conviction proceedings.  *Jefferson v. Upton*, 560 U.S. 284, 293-94 (2010); *Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985); *Ex parte Reed*, 271 S.W.3d 698, 729 (Tex. Crim. App. 2008).   In addition to unnecessarily complicating this Court's independent review of the record, *Ex parte Reed*, 271 S.W.3d at 698, the practice raises serious doubts concerning the fairness of the proceedings intended to ensure that this State's most severe punishment has been lawfully assigned.  This is especially true when, as here, the State's proposal does little else than parrot the explanations offered by trial counsel in their affidavits, even to the point where it proposes findings which are belied by the uncontroverted evidence before the convicting court.  (*Compare* State's Initial Proposed Findings & Conclusions 8-9 (averring that trial counsel "cross-examined Jackson on the contents of the diary"), *with* 20 RR at 75 (trial counsel declines to cross-examine Jackson during the guilt/ innocence phase); 26 RR at 103-17 (trial counsel does not mention the diary in his cross-examination of Jackson during the punishment phase).)

Furthermore, while the instant pleading only concerns Granger, it cannot be ignored that the convicting courts of this State routinely adopt in full the State's proposed findings of fact and conclusions of law.  *See Ex parte Cortne Robinson*, Harrison County, WR-81,583-01 (findings signed Aug. 25, 2014); *Ex parte Kwame Rockwell*, Tarrant County, WR-80,232-01 (Sept.  9, 2014); *Ex parte Mark Soliz*, Johnson County, WR-82,429-01 (Nov. 6, 2014); *Ex parte Garland Harper*, Harris County, WR-81,576-01 (Dec. 11, 2014); *Ex parte Gary Green*, Dallas County, WR-81,575-01 (Dec. 31, 2014); *Ex parte Juan Ramirez*, Hidalgo County,

WR-71,401-01 (Jan. 20, 2015); *Ex parte Teddrick Batiste*, Harris County, WR-81,570-01 (Jan. 21, 2015); *Ex parte John Hummel*, Tarrant County, WR-81,578-01 (Jan. 21, 2015). That such a practice has become commonplace in the review of capital defendants' applications for writ of habeas corpus suggests Texas's death penalty statutory scheme no longer functions as an independent and impartial system but, instead, effectively denies capital defendants (like Granger) their due process rights under the United States and Texas Constitutions. Worse still, and as is demonstrated in Granger's case, the practice undermines the accuracy of the post-conviction review process.

### D.  Granger's Application Should Be Remanded to the Convicting Court

The whole of Article 11.071 is "built upon the premise that a death row inmate [has] one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute." *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002); *accord Ex parte Medina*, 361 S.W.3d 633, 642 (Tex. Crim. App. 2011). Absent a more searching inquiry into the allegations raised in Granger's Application, and through its adoption of the State's proposed findings of fact and conclusions of law despite that proposal's severe infirmities, the convicting court effectively has deprived Granger of that opportunity which Article 11.071 is intended to furnish. Accordingly, Granger requests that this Court remand the Application to the convicting court with instruction to proceed according to Section 9 of Article 11.071.

Pursuant to that section, the convicting court should be instructed to enter an order designating the controverted and material issues of fact to be resolved, and then to resolve those issues in the manner set out in Section 9. Only then will Granger be provided his "one full and fair opportunity" to present his claims. *Ex parte Kerr*, 64 S.W.3d at 419.

Respectfully submitted,

DATED: May 7, 2015

By _____
Derek VerHagen
Post-Conviction Attorney

By _____
Ryan Carlyle Kent
Post-Conviction Attorney

## CERTIFICATE OF SERVICE

I, the undersigned, declare and certify that I have served the foregoing Applicant's Objections to the Convicting Court's Findings of Fact and Conclusions of Law upon:

Court of Criminal Appeals
P.O. Box 112308
Austin, Texas 78711
(Original by e-file)

Jefferson County District Attorney
Attn: Wayln Thompson
1149 Pearl Street
Beaumont, Texas 77701
(One copy)

Bartholomew Granger
TDCJ No. 999579
TDCJ Polunsky Unit
3872 FM 350 South
Livingston, TX 77351
(One copy)

This certification is executed on May 7, 2015, at Austin, Texas.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Derek VerHagen